504 So.2d 1070 (1987)
STATE of Louisiana
v.
Carl Patrick SMITH (Two Cases).
Nos. KA 86 0930, KA 86 0931.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
*1072 Keith M. Whipple, Asst. Dist. Atty., Houma, for plaintiff and appelleeState.
Paul E. Brown, Chief Counsel, Office of the Indigent Defenders, Houma, for defendant and appellant-Carl P. Smith.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
Carl Patrick Smith was charged by bill of information with attempted first degree murder, in violation of La.R.S. 14:30 and 14:27. Additionally he was indicted by the Terrebonne Parish Grand Jury for aggravated rape, in violation of La.R.S. 14:42 A(3). Defendant pled not guilty to both charges and was tried by a jury, which convicted him as charged. He was sentenced to serve a term of fifty years at hard labor for the conviction of attempted first degree murder. The mandatory sentence of life imprisonment without benefit of probation, parole or suspension of sentence was imposed for the aggravated rape conviction. Defendant has appealed, assigning fourteen errors and briefing eleven in seven arguments. Assignments of error numbers five, seven and ten were not briefed and are, therefore, considered abandoned. Uniform Rules Courts of Appeal Rule 2-12.4.

FACTS
The charges in this case resulted from the brutal attack of a young woman in her Houma, Louisiana, home. On the night of the attack, the victim had finished dressing to go out with some friends. At approximately 9:00 p.m., she walked over to Constance Harvey's house, which was nearby, to return an umbrella. She left the key in her back door, intending to return very shortly to turn on some lights and then go out. When she returned, defendant was there, standing in her kitchen. She recognized *1073 defendant as Carl Patrick Smith, a casual acquaintance of hers. When she asked defendant what he was doing there, she noticed her kitchen knife in his hand. Defendant then held the knife to the victim's throat and told her he wanted her and would have to kill her. He took her into the bedroom, told her to take her clothes off and hit her several times until she undressed. Defendant proceeded to vaginally rape the victim on the bed. He put her on the floor, urinated on her, and then continued raping her. Then, defendant sat down on top of the victim's face, put his penis in her mouth and forced her to have oral sex with him. He constantly held the knife on the victim and continued telling her that he was going to kill her.
When defendant finished raping the victim, he put his pants and shoes back on, emptied her purse on the bed and took her money. He took a small diamond ring off her finger.
Several times during this incident, Bernard Lagarde and Constance Harvey, two friends of the victim, came to her house and knocked. Each time, defendant forced the victim to tell them she would be out in twenty minutes. Becoming suspicious, they waited for her outside in the yard.
After the last knock at the door, defendant took the victim back to the bedroom, repeated that he was going to kill her, and stabbed her in the left side of the neck with the knife. The victim pushed and knocked him down. With the knife still in her neck and bleeding profusely, the victim ran out of the house, nude. Lagarde and Harvey, who were standing outside of the victim's house, saw her run into the house next door. They both testified that they knew defendant and recognized him as he ran out of the victim's house behind her.
At approximately 10:40 p.m., several Houma police detectives were dispatched to the scene in response to a call stating that a stabbing had occurred. The victim was found lying in a hallway, nude, in a large pool of blood. A knife was lying approximately a foot away from her. She was able to tell the police that she had been raped and stabbed and identified defendant as the perpetrator. The police then located Lagarde and Harvey, the two witnesses at the scene, who identified defendant as the suspect.
The victim was taken to a local hospital, where a formal rape examination was performed. Evidence obtained from this examination revealed the presence of spermatozoa, which could not have been implanted without penetration.
At approximately 11:45 p.m. that night, Lt. Bill Null, Chief of Detectives, received a call from an informant advising him of the whereabouts of defendant. Upon receiving this information, Lt. Null called additional units and proceeded to the advised location. Lt. Null and Detective Babin approached the front door of the residence, while two officers secured the rear of the residence and another officer stationed himself at the side of the house. Null and Babin testified that they knocked on the front door and Cornelius Mitchell opened it. The officers identified themselves and told him that they were investigating a rape and a stabbing and were looking for a suspect named Carl Patrick Smith. They stated that they had information that the suspect was inside the house. Mitchell denied that Smith was inside and stated that the house did not belong to him but that he was in charge while the owner was away. Lt. Null explained to Mitchell that he could give the officers permission to search the house. Null told him that they could surround the house and obtain a search warrant. He further explained that, if Mitchell was hiding the suspect, he could be charged as an accessory after the fact. Mitchell stated that he would check inside for them. He opened the door and led Null, Babin and Officer Perkins into the living room. Mitchell passed a closed door on the left of the hallway and went to two back doors. He opened each one, turned the lights on and said, "He's not in here." The officers heard a noise in the room Mitchell had passed. Mitchell tried to block their entry into the room but was told to get out of the way. The officers opened the door, turned the light on and noticed a double sliding closet door, opened three to four inches.
*1074 Null shined his flashlight into the closet and saw a pair of black hands. Defendant was then discovered crouching under some hanging clothes. He was handcuffed and placed under arrest. After being read his rights, defendant stated that he knew he did something serious and that he had the right to try to escape from the police. He further commented that he would have to "go to the high court for this one."
Cornelius Mitchell testified at trial that he was living at the residence where defendant was found. He was at home that night with his girlfriend, Thelma Starwood, and several small children. Both Mitchell and Starwood testified that the police said they would put the adults in the house in jail if Mitchell did not let them search. Each of the officers involved denied making any threats.
At trial, defendant took the witness stand in his own defense. He denied raping the victim, stating he previously had had sex with her. He stated that the victim agreed to have sex with him that evening. Afterward, while he was putting his clothes back on, she went to the kitchen and came back with a knife. She charged at him; and they had a scuffle, during which the victim was stabbed in the neck. Defendant testified that, when he saw the victim run away, he panicked and went to the home of his cousin, Cornelius Mitchell, where he hid.

ADMISSIBILITY OF EVIDENCE DERIVED FROM WARRANTLESS SEARCH

ASSIGNMENTS OF ERROR NOS. 1 AND 2
Defendant filed a pretrial motion to suppress oral statements made by him at the time of his arrest and the testimony of the arresting officers concerning the facts surrounding the arrest. After an evidentiary hearing, the trial court denied the motion. Defendant contends the trial court erred in denying his motion to suppress evidence alleged to be the fruit of a warrantless, nonconsensual search.
Defendant argues that his arrest was the result of a warrantless and unlawful entry into the home of a third party to effect his own arrest. In support of this contention, defendant cites Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), wherein the United States Supreme Court held that a law enforcement officer may not legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant, absent exigent circumstances or consent. The Court held that an arrest warrant does not protect the Fourth Amendment privacy interests of a person not named in the warrant. However, in Steagald, the constitutional challenge was asserted by the third party whose house was searched and not by the subject of the arrest warrant.
Such is not the case here. Mitchell (the third party) is not claiming that his constitutional right to be secure in his house against an unreasonable search has been violated. However, defendant has standing to assert the claim that the entry into Mitchell's house without a search warrant violated his constitutional rights under the 1974 Louisiana Constitution, Article I, § 5.[1] Defendant contends the oral statements he made and the police officers' testimony concerning his arrest should be suppressed as fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
A search conducted without a warrant is presumably unreasonable unless justified by one of the specifically established exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New *1075 Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Farber, 446 So.2d 1376 (La.App. 1st Cir.), writ denied, 449 So.2d 1356 (La.1984). A valid consent search is a well recognized exception to the warrant requirement, but the state has the burden of proving that the consent was valid in that it was freely and voluntarily given. Schneckloth v. Bustamonte, supra; Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); State v. Smith, 433 So.2d 688 (La.1983); State v. Wolfe, 398 So.2d 1117 (La.1981). Voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case. These factual determinations are to be given great weight on appellate review. State v. Smith, supra. Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Bodley, 394 So.2d 584 (La.1981).
Warrantless entries into a person's home, though per se unreasonable, may be justified where sufficient exigent circumstances exist. State v. Farber, supra. Exigent circumstances include: lack of sufficient time to prepare an affidavit, locate a magistrate and obtain a warrant after probable cause arises; imminent danger of destruction of evidence; and the possibility of escape.
After a thorough review of the record, we find that the officers' entry into the residence was legal, based on Mitchell's valid consent. Once lawfully inside the residence, the officers' entry into the room where defendant was found was justified by exigent circumstances.
In the present case, Cornelius Mitchell testified at the suppression hearing that he lived in the residence where defendant was found hiding. He had been living there with his sister for approximately two years and paid her rent. Mitchell, therefore, had the right to permit the officers to enter the residence and search for defendant.
Defendant contends that any consent purportedly obtained was not given freely and voluntarily because the officers threatened the occupants of the residence with possible criminal charges in order to gain entrance into the residence. The trial court, in its oral reasons for denying defendant's motion to suppress, specifically found that Cornelius Mitchell consented to the officers' entry into the residence to search for defendant and that he did so freely and voluntarily. The court noted that Mitchell, when asked if he told the police officers not to come in the house, answered, "I believe I did." The court found this to be an equivocation, indicating that perhaps Mitchell did not refuse their entry. The court considered as false Mitchell's testimony that the police threatened to arrest him if he did not let them enter the house. The court accepted the explanation of the police officers that they informed Mitchell that his harboring a person who has committed a felony is a criminal offense. The court found that the officers were correct and justified in informing Mitchell that he could be charged with accessory after the fact if he was aiding defendant in eluding detection by the officers. The court stated that it was fully satisfied that Mitchell knew defendant was hiding in the closet, and his reluctance at first to let them enter was because he was trying to prevent them from finding defendant.
In our view, the trial court analyzed properly the totality of the circumstances in this case and determined that Mitchell's consent to enter had been given freely and voluntarily. The trial court was in a better position to assess the credibility of the witnesses, and its factual findings are entitled to great weight on appeal. We find, therefore, that the entry into Mitchell's residence was legal, based upon Mitchell's valid consent.
Defendant contends that if the officers had Mitchell's valid consent to enter the residence, such consent was limited. Defendant argues that the officers exceeded the scope of Mitchell's consent by entering *1076 the room where defendant was found. Defendant notes that Mitchell tried to block the entrance to that room and was told to step aside. He argues that Mitchell specifically refused to give the police permission to enter that room. While recognizing that Mitchell withdrew or limited his consent at that point, we find that fact irrelevant since the evidence supports a finding that another exception to the warrant requirement, exigent circumstances, existed in this instance.
A review of the evidence reveals that Mitchell agreed to let the officers into the house to search for defendant. He denied that defendant was there and said he wanted to go into the back and check first, just to prove to the officers that defendant was not there. The police stood in the living room, where they could observe the hallway. Mitchell walked down the hall, past a closed door on the left, to the two rear closed doors. He opened each one, then walked back and stated that defendant was not there. The officers heard a noise, which came from the room that Mitchell had passed. When they asked Mitchell about that room, he went to it and stood in front of the closed door, stating that defendant was not in that room. Lt. Null ordered Mitchell away from the door, opened it and subsequently found defendant hiding in the closet.
The trial court, in oral reasons, viewed Mitchell's behavior as follows:
His actions in going to other rooms and opening the doors and turning lights on and showing the officers that there was no one there and then when he passes up the room where the man was hiding he by his own admission stands in front of the door indicates to me that he knew that the defendant was in that house and was in that room and he didn't want the police officers to look in the room because he knew they would find him.
We agree, and find that this behavior, coupled with the fact that the officers heard a noise coming from that room, gave the police sufficient reason to believe that defendant was, in fact, in that room. At that precise moment, their leaving to obtain a search warrant was out of the question. There was a possibility that defendant could have escaped. In addition, there was a possibility of a violent confrontation, possibly involving the small children in the residence. We conclude that exigent circumstances justified the warrantless search of that room and the seizure of defendant's person.
Therefore, the entry into the room by police officers and the arrest of defendant without a warrant were not unconstitutional. Rather, they were authorized under valid exceptions to the warrant requirement. Thus, the admission into evidence of statements made by defendant subsequent to his lawful arrest and the testimony as to the circumstances surrounding the arrest is not precluded on this basis.
Even if defendant's statements and the fact he was found hiding in a closet had been suppressed, there exists other overwhelming evidence which more than adequately proves the state's case. Any error in allowing it into evidence was harmless. La.Code Cr.P. Art. 921.
We conclude the trial court was correct in denying defendant's motion to suppress. Accordingly, these assignments of error lack merit.

GRUESOME PHOTOGRAPHS

ASSIGNMENTS OF ERROR NOS. 3, 4 AND 6
During the trial, numerous photographs depicting the crime scene were introduced into evidence, over objections made by defense counsel. In assignment of error number three, defendant contends the trial court erred in denying his motion for a mistrial based on alleged improper references to the photographs made during the state's opening statement. By assignment of error number four, defendant argues that the trial court erred in denying his motion to suppress because the prejudicial effect of the photographs outweighs any probative value they may have. Finally, in assignment of error number six, defendant contends the trial court erred in overruling his objection to the introduction of the photographs *1077 because the person who took the pictures was not present at trial to testify.
The admission of allegedly gruesome photographs will not be overturned unless it is clear that the prejudicial effect of the photographs outweighs their probative value. State v. Burge, 486 So.2d 855 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La.1986). Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted, are generally admissible.
Furthermore, photographs are generally admissible in evidence when they are shown to have been accurately taken and to be a correct representation of the subject in controversy. A proper foundation for admission in evidence of a photograph is laid when a witness having personal knowledge of the subject depicted by the photograph identifies it. It is well settled that the photograph need not be identified by the person who took it to be admissible in evidence. State v. Leggett, 363 So.2d 434 (La.1978); State v. Robertson, 454 So.2d 205 (La.App. 1st Cir.), writ denied, 458 So.2d 487 (La.1984).
The prosecutor's opening statement is not evidence and has no probative force. The general rule is that, absent bad faith on the part of the prosecutor or clear and substantial prejudice, references in the opening statement to evidence later ruled inadmissible is not ground for a mistrial. The rule takes into account that proof frequently falls short of professional expectations. State v. Maillian, 464 So.2d 1071 (La.App. 1st Cir.), writ denied, 469 So.2d 982 (La.1985). We need not address this issue, however, as it is pretermitted by our disposition of the admissibility issue.
During trial, after opening statements were made, the trial court heard arguments relating to defendant's motion to suppress allegedly gruesome photographs. The record indicates that the trial court examined the contested photographs and found that the probative value of the photographs outweighed any prejudicial effect. The pictures show the scene as it existed at the time of the commission of the crime. The trial court found them relevant to prove one of the essential elements of attempted first degree murder, that defendant had the specific intent to kill or inflict great bodily harm. We agree that the photographs, which depict large quantities of blood at the crime scene, are relevant to the state's obligation to prove the requisite criminal intent. We find no error in the trial court's denial of defendant's motion to suppress. Accordingly, these photographs were properly admitted over defense counsel's objections.
When the state actually introduced the photographs into evidence at trial, defense counsel objected because the person who took the pictures was not present at trial to testify. The trial court overruled the objection. In brief, defendant apparently claims the state failed to lay the proper foundation for introduction of the photographs.
Prior to their introduction into evidence, the photographs were individually identified by Detective Patrick Babin. Babin testified that the pictures accurately depict the scene of the crimes. They were taken by Lt. Marcel Null, photographer for the Houma Police Department, at the request of Detective Babin. We conclude that the proper foundation was provided by the testimony of Babin. Having ascertained that the photographs were accurately taken, fairly represent the subject in question and are relevant to the case, the trial court did not abuse its discretion in admitting the photographs into evidence.
Accordingly, these assignments of error are without merit.

DEFENDANT'S APPEARANCE IN SHACKLES AND HANDCUFFS: UNDUE PREJUDICE

ASSIGNMENTS OF ERROR NOS. 8 AND 9
Defendant contends that his presence before certain members of the jury in handcuffs and shackles may have prejudiced the jury and thus deprived him of a fair trial. Defendant argues that the trial court erred *1078 in denying his motion for a mistrial, as well as his request to admonish the jury.
Ordinarily, a defendant before the court should not be shackled or handcuffed or garbed in any manner destructive of the presumption of his innocence and of the dignity and impartiality of judicial proceedings. However, exceptional circumstances may require, within the discretion of the trial court, the restraint of the prisoner for reasons of courtroom security or order or where the prisoner's past conduct reasonably justifies apprehension that he may attempt to escape. If the handcuffing is objected to at the time of trial, for a finding of reversible error the record must show an abuse of the trial court's reasonable discretion resulting in clear prejudice to the accused. State v. Wilkerson, 403 So.2d 652 (La.1981).
During the course of the trial, it was brought to the attention of the court that several jurors witnessed defendant leaving the courtroom in handcuffs and shackles. Defense counsel then moved for a mistrial based on the fact that the jury may have been prejudiced against defendant. In its oral reasons for denying the motion, the trial court noted that certain actions by defendant necessitated the use of shackles and handcuffs. First, the court was made aware by the chief bailiff that defendant threatened the victim of the crime, as well as the court bailiffs. Second, defendant threatened to destroy the courtroom by turning the tables upside down. Third, defendant made veiled threats against the trial judge. Finally, defendant verbally threatened to harm the Assistant District Attorney who was prosecuting the case. The trial court concluded that to ensure courtroom security, it must require that defendant be shackled and handcuffed at certain times, particularly when being transported between the jail and the courtroom, and during recesses. Defendant was not restrained during the presentation of evidence; he sat at counsel table totally unrestrained.
Defense counsel objected to the court's denial of the motion for mistrial and asked that the court admonish those jurors who actually saw defendant in shackles and handcuffs to disregard the same. The trial court refused this request, stating that it had discussed the matter with the bailiff in charge of security and the use of shackles and handcuffs on defendant would be minimized and would only be used under exceptional circumstances. The trial court further opined that admonishment would merely aggravate the situation because admonishing only certain jury members would raise the curiosity of the other jury members.
On the record before us, there is neither a showing that use of restraints prejudicially affected the accused or warrants overturning his conviction. There is no showing that the jurors were influenced by seeing defendant in restraints, nor that they could not render a fair and impartial verdict based on the evidence presented. The action taken by the trial court in shackling and handcuffing defendant was proper under the circumstances and was done in order to prevent any effort on the part of defendant to disrupt the proceedings of the court.
Therefore, these assignments of error lack merit.

DISCLOSURE OF BRADY EVIDENCE

ASSIGNMENT OF ERROR NO. 11
Defendant next argues that the trial court erred when it refused to order the state to produce the initial statement made by the victim.
In his pretrial motion for discovery, defendant requested, among other things, evidence in the possession of the prosecutor which is favorable to defendant and which is material and relevant to the issue of guilt or punishment. During trial it was revealed that Detective Patrick Babin took a typed statement from the victim approximately five days after the rape. The statement was not entered into evidence at trial. After the state rested its case, defense counsel moved for production of "statements from the victim claiming certain things in the progression of different events." Defense counsel stated he presumed *1079 such a statement exists due to the nature of the prosecutor's opening statement. He further argued that the victim's statement contained exculpatory evidence based on material differences between her trial testimony and the prosecutor's opening statement. The trial court denied defendant's motion concluding that there were not any relevant and material inconsistencies in the victim's testimony and the prosecutor's opening statement.
Defendant argues in brief that the testimony of the victim differed from the prosecutor's version of how the alleged crime had taken place. Since the victim was the only person present at the scene of the crime other than the perpetrator, defense counsel contends that the prosecutor must have obtained his version of the events from the victim. Defense counsel concludes that he should have been allowed access to the victim's initial statement to police, since it could have been used to impeach the credibility of the witness.
Under the United States Supreme Court decision of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the state, upon request, must produce evidence that is favorable to the accused where it is material to guilt or punishment. This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Where a specific request is made for such information and the subject matter of such a request is material, or if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the information to the trial judge for an in camera inspection. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Cobb, 419 So.2d 1237 (La. 1982).
The test for determining materiality was firmly established in United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and has been applied by the Louisiana Supreme Court. See State v. Rosiere, 488 So.2d 965 (La.1986). The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. United States v. Bagley, supra. In United States v. Agurs, supra, the court suggested that the test for materiality may differ depending on the type of discovery request made by defendant. It noted that the test might be more lenient to the defense when the request was specific, as opposed to when there is no request or only a general request. In Bagley, the court rejected this distinction, ruling that its standard of materiality was "sufficiently flexible to cover the `no request,' `general request,' and `specific request' cases for prosecutorial failure to disclose evidence favorable to the accused...." United States v. Bagley, supra.
Except as specifically provided by statute, a defendant in Louisiana is not entitled to statements by witnesses made to the district attorney or to agents of the state. La.Code Cr.P.Art. 723. However, defendant may not be denied exculpatory statements made by a witness other than defendant, provided the statement is material and relevant to the issue of guilt or punishment. La. Code Cr.P.Art. 718; State v. Ates, 418 So.2d 1326 (La.1982). The court may conduct an in camera inspection to determine the nature of the requested materials. La.Code Cr.P.Art. 718; State v. Cobb, supra. The trial court should seal and make a reviewable record of all documents it examines in camera. See State v. Oliver, 430 So.2d 650 (La. 1983), cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); State v. McClinton, 492 So.2d 162 (La.App. 1st Cir. 1986). The defendant will be denied an in camera inspection by the trial court where the state has denied possession of the specific information requested and the defendant makes no showing to the contrary. State v. Cobb, supra.
In this case, defense counsel specifically requested statements made by the *1080 victim to be used for impeachment purposes. It was apparent that the request was for inconsistent and exulpatory statements. It was established during the trial that the police had taken a typed statement from the victim. There is no evidence in the record that the state had denied having possession of any statement made by the victim. Defendant cannot make a positive showing of inconsistencies or Brady information in the statements because, of course, he has no knowledge of the contents thereof. He based his request on the differing versions of facts given by the victim in her trial testimony and by the prosecutor in his opening statement. Since the victim was the chief prosecution witness and her testimony went directly to the issue of guilt of defendant, and since the requested information was discoverable, an in camera inspection was warranted.
We, therefore, conclude that in this case the trial court should have conducted an in camera inspection for material inconsistencies and Brady information in the requested statements of the victim.
Accordingly, we will remand the case to the trial court for its determination of: (1) whether or not the written or recorded statements of the victim contain inconsistencies with her trial testimony, or other evidence favorable to the accused; and if so, (2) whether or not such evidence is material to the defendant's guilt or punishment, employing the test for determining materiality, as stated in United States v. Bagley, supra.
In the event of an affirmative determination of both of these factors by the trial court, a new trial will be required. However, upon a contrary finding, the conviction will stand, subject to defendant's right to appeal the adverse ruling. For purposes of any future appeal, all items reviewed in camera shall be sealed and made a part of the record.

EVIDENCE OF PRIOR CONVICTIONS FOR IMPEACHMENT

ASSIGNMENT OF ERROR NO. 12
By means of this assignment of error, defendant urges that the trial court erred in permitting the prosecutor to cross-examine defendant about the sentence he served on a prior conviction.
At trial, defendant took the stand to testify in his own behalf. On cross-examination, the state sought to impeach his credibility with proof of prior convictions. Defendant admitted being convicted of simple burglary and simple robbery. Defense counsel objected when defendant was asked what his sentence was on the simple burglary conviction. The trial court overruled the objection, and defendant responded that he served four years in the state penitentiary. Defendant further stated that he was released from prison on December 31, 1984. Defendant argues that this line of questioning went beyond the scope of impeachment.
Evidence of prior convictions is permitted for impeachment purposes by La.R.S. 15:495, which provides:
Evidence of conviction of crime but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
In impeaching the credibility of a defense witness, the state may not only establish prior convictions of the witness but may also cross-examine that witness in order to show the true nature of the offense. State v. Jackson, 307 So.2d 604 (La.1975). This rule has been extended to defendants who take the stand in their own behalf. State v. Connor, 403 So.2d 678 (La.1981). However, care must be taken to avoid prejudice to the rights of the accused by expansive *1081 reference to details of a former conviction. State v. Lester, 482 So.2d 15 (La.App. 1st Cir.1985). The extent to which an inquiry into prior convictions is permitted depends on the facts of each case; the trial court has great discretion to control the length and depth of the examination. State v. Williams, 445 So.2d 1171 (La.1984); State v. Lester, supra.
In the instant case, we cannot say that the trial court abused its discretion in overruling defendant's objection. The prosecutor's inquiry was very limited and concerned the sentence defendant received as a result of a simple burglary conviction. Nor can we discern any prejudice that resulted from the prosecutor's remarks. In light of the overwhelming evidence in the record, the questioning at issue could not have had a significant bearing on the outcome of the case and, therefore, does not constitute grounds for reversal. See La. Code Cr.P. Art. 921.
This assignment of error lacks merit.

SUFFICIENCY OF THE EVIDENCE

ASSIGNMENT OF ERROR NO. 13
Defendant contends the jury's verdict is contrary to the law and the evidence. He argues that the trial court erred in denying his motion for a post-verdict judgment of acquittal. Defendant claims that the victim's version of the facts is too improbable for reasonable men to believe.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La.Code Cr.P. Art. 821; State v. Lewis, 489 So.2d 1055 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986).
Defendant was charged with aggravated rape and attempted first degree murder, in violation of La.R.S. 14:42 A(3), 14:30 and 14:27. Aggravated rape is defined in La. R.S. 14:42 A(3) as follows:
A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
First degree murder is defined in La.R.S. 14:30, in pertinent part, as follows:
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery.
Attempt is defined in La.R.S. 14:27, in pertinent part, as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishment of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
In the case sub judice, it is uncontroverted that sexual intercourse took place between defendant and the victim and that the victim subsequently suffered a knife wound in the neck. The victim positively identified defendant as being the perpetrator of the charged offenses. Defendant took the stand in his own defense. He claimed that the act of sexual intercourse was consensual and that the victim was stabbed accidentally in a scuffle over a knife with which she attacked him. The jury's verdict indicates that, after considering the credibility of the witnesses and weighing the evidence, the jury accepted the testimony of the victim and rejected the testimony of defendant. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Lewis, supra.
*1082 In this case, the witnesses testified and the jury made its decision. An appellate court will not reweigh the credibility of witnesses under the Jackson v. Virginia standard.[2]State v. Lewis, supra.
The testimony of the victim is sufficient to establish the elements of an offense. State v. Robinson, 491 So.2d 451 (La.App. 1st Cir.1986). We believe that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the state proved the essential elements of the crimes of aggravated rape and attempted first degree murder beyond a reasonable doubt.
This assignment of error is without merit.

MOTION FOR NEW TRIAL

ASSIGNMENT OF ERROR NO. 14
Finally, defendant argues that the trial court erred in denying his motion for a new trial. First, he contends that the verdict was contrary to the law and the evidence presented. Further, he contends the court's rulings during the proceedings constitute prejudicial error.
A trial court, acting as a thirteenth juror, may consider only the weight and not the sufficiency of the evidence in a motion for new trial. His decision to grant or deny the motion is not subject to review by the appellate courts. La. Const. Art. 5, Sec. 10(B); La.Code Cr.P. Art. 858; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir. 1983). In any event, we have rejected, under Assignment of Error number thirteen, defendant's contention that the evidence was insufficient.
Defendant contends further that a new trial should have been granted because several rulings by the trial court were improper and led to prejudicial and reversible error. In brief, defendant specifies that these rulings consist of the same rulings assigned as error in numbers one, two, three, four, six and eleven.
The trial court's decision on a motion for new trial will not be disturbed absent a showing of a clear abuse of discretion. State v. Aitch, 465 So.2d 27 (La.App. 1st Cir.1984). For the reasons enumerated under our previous discussion of these assignments, subject to our findings relative to assignment of error number eleven, we find no abuse of discretion by the trial court in this instance.
Accordingly, defendant's conviction and sentence are conditionally affirmed, subject to remand for further proceedings in accordance with the views expressed herein and reserving unto the trial court the authority to grant a new trial on the basis of its findings, and also reserving defendant's right to appeal from any adverse ruling by the trial court.
AFFIRMED CONDITIONALLY AND REMANDED.
NOTES
[1] Art. 1 § 5 provides:

Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
[2] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).