589 So.2d 555 (1991)
STATE of Louisiana
v.
Darryl THOMAS.
No. KA 90 1264.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
*560 Bryan Bush, Dist. Atty., Baton Rouge by Jesse Bankston, Asst. Dist. Atty., for plaintiff/appellee.
Kathryn Flynn, Office of the Public Defender, Baton Rouge, for defendant/appellant.
Before COVINGTON, C.J., and SAVOIE and LEBLANC, JJ.
COVINGTON, Chief Judge.
The defendant, Darryl Thomas, and a co-defendant, Aaron Vincent, were charged by bill of information with second degree kidnapping and armed robbery, violations of LSA-R.S. 14:44.1 and 14:64, respectively. They pled not guilty; and, after trial by jury, the defendant was found guilty as charged of both offenses, and Mr. Vincent was acquitted of both charges. The defendant received two concurrent sentences of thirty years at hard labor, without benefit of parole, probation, or suspension of sentence, for these convictions, with credit for time served. He has appealed, alleging sixteen assignments of error, as follows:
1. The trial court erred in denying the defendant's motion to suppress physical evidence.
2. The trial court erred in denying the defendant's motion to suppress identifications.
3. The trial court erred in sustaining the State's objection to defense counsel's questions during voir dire.
4. The trial court erred in sustaining the State's objection to defense counsel's questions during voir dire.
5. The trial court erred in granting the State's challenge for cause of a prospective juror.
6. The trial court erred in accepting Brenda Micelli as an expert witness.
7. The trial court erred in overruling defense counsel's objection to the defendant being fingerprinted in court.
8. The trial court erred in accepting Annie Michelli as an expert witness.
9. The trial court erred in allowing State Exhibits 6 and 7 to be introduced into evidence over defense objection.
10. The trial court erred in denying the defendant's motion for a mistrial.
11. The trial court erred in denying the defendant's motion for a mistrial.
12. The trial court erred in overruling a defense objection to hearsay testimony.
13. The trial court erred in overruling a defense objection to the presentation of improper rebuttal testimony.
14. The trial court erred in overruling a defense objection to the presentation of improper rebuttal testimony.
15. The trial court erred in denying the defendant's motion for post-verdict judgment of acquittal.
16. The trial court erred in imposing an excessive sentence and in failing to comply with the sentencing guidelines of La. C.Cr.P. art. 894.1.
Assignments of error numbers 6, 7, 8, 9, and 11 were not briefed on appeal and, therefore, are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

FACTS
On the evening of September 27, 1989, Tawn Augustus and her boyfriend, Clyde Williams, were seated in Ms. Augustus' car *561 in a parking lot in City Park in Baton Rouge, Louisiana. They were in an area of the park commonly known as "Monkey Hill" when they were approached by two young, black males armed with pistols. Each gunman had the lower part of his face covered with a bandanna. One gunman, later identified as the defendant, approached Ms. Augustus, who was seated behind the steering wheel, and ordered her to get out of the car and lie on the ground. The other gunman ordered Mr. Williams to get out of the front passenger seat and lie on the ground. The defendant unbuttoned Ms. Augustus' shorts and fondled her before allowing her to get back in her car and drive away. Then, the two assailants forced Mr. Williams to accompany them a short distance to a nearby tree, where they began searching his pockets. They took some change and some of his clothes, including a belt (State Exhibit 5) and some sandals (State Exhibit 8). The defendant struck Mr. Williams in the head with his gun, and the other assailant kicked Mr. Williams before he was able to escape from them by running away. Mr. Williams fled to the home of Ms. Augustus' aunt, where he called the police.
In the meantime, Ms. Augustus had driven to a nearby police station and related what had happened. The police questioned Ms. Augustus at the station and returned to the crime scene with her. She showed the officers where the incident had occurred before they returned her to the police station.
Officers investigating the crime scene found a hole in the fence which surrounded the park. They exited the park through the hole and entered the backyard of a house on Arkansas Street. They observed three black males (one of whom was the defendant) standing in front of this house. Only a few feet from where they were standing, the police observed a pair of sandals which were identified by some of Mr. Williams' relatives as belonging to Mr. Williams. Although the officers attempted to ask these men some questions, they refused to respond and walked away. The police watched these men as they walked to some nearby houses on Arkansas Street. A police dog tracked the scent of the sandals back through the hole in the fence to the area of the park where the offenses had occurred.
A short time later, other officers picked up Mr. Williams and brought him to Arkansas Street. Mr. Williams gave the police a description of the assailants and their clothing. The police arrested the defendant at a house on Arkansas Street when they realized that he matched the description of one of the assailants given by Mr. Williams. The owner of this house, Ronald Johnson, agreed to come to the police station for questioning. The defendant's brother, Sterling Thomas, attempted to interfere and also was arrested. Aaron Vincent was arrested at a nearby house. At the police station, both Mr. Williams and Ms. Augustus identified the defendant. Mr. Williams also identified Mr. Vincent as the second gunman. Fingerprints removed from Ms. Augustus' vehicle subsequently were matched to the defendant.

ASSIGNMENTS OF ERROR NOS. ONE AND TWO:
In assignment of error number one, the defendant contends that the court erred in denying his motion to suppress physical evidence. In assignment of error number two, the defendant contends that the trial court erred in denying his motion to suppress identifications.
The defendant argues that physical evidence should have been suppressed because the arresting officers lacked probable cause and because no exigent circumstances justified their warrantless entry into Ronald Johnson's house in order to seize and arrest the defendant. Initially, we note that no physical evidence introduced at trial by the State was the direct result of the defendant's arrest. State Exhibit 1 was a picture of Ms. Augustus' vehicle taken at the police station. State Exhibits 2, 3, and 4 were pictures of Mr. Williams' face and his head injury which he received when the defendant struck him with the pistol. State Exhibit 5 was Mr. Williams' belt which was found at the crime scene. State Exhibit 8, Mr. Williams' *562 sandals, were located in front of a house on Arkansas Street before the defendant was arrested. State Exhibit 6 consisted of latent fingerprints removed from Ms. Augustus' car. Finally, State Exhibit 7 consisted of the defendant's fingerprints which were taken in court. Nevertheless, we must address the issue of the defendant's arrest because he made the additional argument that the identifications were a direct result of the illegal arrest and, therefore, also should be suppressed.
At the hearing on the motion to suppress, there was conflicting testimony as to whether the defendant was arrested on the front porch of Mr. Johnson's home or inside the home. The trial court never made a specific finding of fact on this issue. Instead, the trial court merely ruled that the defendant's arrest was lawful because the officers had probable cause to arrest him and because exigent circumstances were present.
Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed, or is committing, an offense. Although mere suspicion cannot justify an arrest, the officer does not need proof sufficient to convict. La.C.Cr.P. art. 213; State v. Farber, 446 So.2d 1376, 1379 (La.App. 1st Cir.), writ denied, 449 So.2d 1356 (La.1984). One of the most important elements in determining whether or not probable cause exists is satisfied when the police know that a crime actually has been committed. When a crime has been committed and the police know it, they have only to determine whether or not there is reasonably trustworthy information to justify a man of ordinary caution in believing the person to be arrested has committed the crime. State v. Farber, 446 So.2d at 1379.
In the instant case, the police officers knew that a crime had been committed. Ms. Augustus drove to the police station, reported the incident, and accompanied the police to the crime scene. At this point, Mr. Williams had not yet been located. However, his sandals had been discovered in the front yard of a house on Arkansas Street. Standing only a few feet away from the sandals were the defendant and two other men who refused to answer any questions and walked away from investigating officers. A police dog tracked the scent of the sandals back through the hole in the fence to the crime scene. When Mr. Williams was brought to Arkansas Street, the police realized that the defendant matched the description given by Mr. Williams. At this point, as the trial court correctly concluded, the officers had probable cause to believe the defendant was one of the two men who had committed the instant offenses.
However, probable cause alone does not justify the entry into an area otherwise protected by the Fourth Amendment to the U.S. Constitution and Article 1, Section 5, of the Louisiana Constitution. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982). In order to enter the home of a third person to arrest the defendant, a search warrant was required, unless justified by a recognized exception to the warrant requirement. State v. Smith, 504 So.2d 1070, 1074-1075 (La.App. 1st Cir. 1987). One such exception is when sufficient exigent circumstances exist to justify the warrantless entry. Exigent circumstances include: lack of sufficient time to prepare an affidavit, locate a magistrate, and obtain a warrant after probable cause arises; imminent danger of destruction of evidence; and the possibility of escape. State v. Welch, 449 So.2d 468, 470 (La. 1984); State v. Smith, 504 So.2d at 1075. The avoidance of a possible violent confrontation which would cause injury to the police officers and/or the public has also been found to constitute an exigent circumstance. State v. Hathaway, 411 So.2d at 1079.
In the instant case, the decision to arrest the defendant was made approximately one and one-half hours after Ms. Augustus arrived at the police station. The defendant was first observed in front of one house on Arkansas Street, and he *563 had walked to another house nearby. The police did not know the defendant's name or where he lived. Without immediate action, there was a distinct possibility that the defendant could escape during the time which would have been required to prepare an affidavit, locate a magistrate, and obtain arrest and/or search warrants for the defendant and the other suspect. Furthermore, the police received information that the assailants were armed. Their prompt action in arresting the defendant reduced the possibility of a violent confrontation which could have resulted in injury to the officers, defendant, or innocent bystanders. Finally, there was a possibility that the defendant could have hidden or destroyed any physical evidence connected with these offenses such as a gun, his clothes, or items taken from Mr. Williams. Considering all of the above facts, once the police had probable cause to arrest the defendant, their prompt action in doing so, whether the defendant was located on Mr. Johnson's front porch or inside his house, was warranted by exigent circumstances. For the above reasons, we find that the trial court correctly found the defendant's arrest to be lawfully based upon probable cause and exigent circumstances and, therefore, it did not err in denying the motion to suppress on this basis.
The defendant also contends that the identifications made by the victims were suggestive and unreliable and, therefore, should have been suppressed. There was a discrepancy between Mr. Williams' motion to suppress testimony and his trial testimony[1] about whether or not he identified the defendant at the time of the arrest. Additionally, both Mr. Williams and Ms. Augustus identified the defendant at the police station. The trial court ruled that all of the identifications were admissible at trial. Herein, we will consider the identifications of the defendant made at both locations.
A defendant attempting to suppress an identification must prove that the identification was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Daughtery, 563 So.2d 1171, 1173-1174 (La.App. 1st Cir.), writ denied, 569 So.2d 980 (La.1990). Even should the identification be considered suggestive, that factor alone does not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Lewis, 489 So.2d 1055, 1057-1058 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986). In reviewing an identification procedure, the trial court must look at the totality of the circumstances surrounding the identification procedure in order to determine whether or not the procedure was so unnecessarily suggestive and so conducive to irreparable mistaken identification that the defendant was denied due process of law. State v. Marchese, 430 So.2d 1303, 1307 (La.App. 1st Cir.1983). The trial court's determination on the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Bickham, 404 So.2d 929, 934 (La.1981).
One-on-one confrontations between a suspect and victim are not favored by the law, but they are permissible when justified by the overall circumstances. This procedure is generally permitted when the accused is apprehended within a short time after the commission of the offense and is returned to the crime scene for an on-the-spot identification. Such a prompt in-the-field identification, under appropriate circumstances, promotes accuracy and expedites the release of innocent suspects. State v. Marchese, 430 So.2d at 1307.
In the instant case, the defendant was arrested approximately one and one-half hours after the offenses were committed. At the trial, Mr. Williams testified that he *564 was present on Arkansas Street when the defendant was arrested and that he identified the defendant. Additionally, approximately two hours after these offenses occurred, the victims and some of their family members were seated in the roll call room at the police station when the defendant, Sterling Thomas, Aaron Vincent, and Ronald Johnson were brought into the police station. At that time, both victims identified the defendant. The trial court concluded that there was no police misconduct in connection with these identifications. We agree.
Even assuming, arguendo, that these identifications were suggestive, the defendant has failed to prove a likelihood of misidentification. In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the U.S. Supreme Court considered these five factors in determining whether or not a photographic identification was reliable: (1) the witness' opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness' certainty displayed at the time of identification; and (5) the length of time elapsed between the crime and the identification. These factors also have been applied in determining the reliability of other types of identifications. See State v. Davis, 409 So.2d 268 (La.1982).
Applying the Manson analysis to the facts of the instant case, we find that these identifications of the defendant by both victims were reliable. Both victims had an opportunity to view the defendant during the commission of these offenses. The defendant initially ordered Ms. Augustus to get out of her car and lie on the ground. Before allowing her to drive away, he unbuttoned her shorts and fondled her. The other assailant ordered Mr. Williams out of the car. However, when Ms. Augustus drove away, both assailants approached Mr. Williams. They searched his pockets and took some change and some articles of clothing, including his belt and sandals. The defendant hit Mr. Williams in the head with a gun and the other assailant kicked him before he could escape. Although the defendant was wearing a bandanna over the lower part of his face, Ms. Augustus testified that she recognized the defendant by the shape of his head, skin tone, height, and clothing. Mr. Williams testified that he had seen the defendant's face and was able to recognize the defendant by his height, skin tone, haircut, and clothing. Both victims certainly paid a high degree of attention during the incident and subsequently gave accurate descriptions of the defendant and his clothing. Finally, both victims positively identified the defendant within two hours of the commission of these offenses.
Moreover, both victims positively identified the defendant at the trial, which took place approximately six months after these offenses. However, in his brief to this Court, defendant does not make any mention of these in-court identifications, nor does he argue that they were tainted by the earlier identifications. A review of the overall circumstances indicates that the victims' identifications were reliable; therefore, the trial court correctly denied the motion to suppress on this basis.
Accordingly, these assignments of error are meritless.

ASSIGNMENTS OF ERROR NOS. THREE AND FOUR:
In these assignments of error, the defendant contends that the trial court erred in sustaining the State's objections to defense counsel's voir dire examination questions.
During defense counsel's voir dire examination of the first panel of prospective jurors, after explaining that the defense would present evidence of an alibi, defense counsel initiated a series of questions on reasonable doubt. The State objected to the following question before defense counsel could finish it:
Let me pose a situation for you, suppose that you hear evidence that Darryl Thomas was at a house on Arkansas Street, but at a different location from where this offense, the incident occurred?

*565 PROSECUTOR: I'm going to object, Your Honor; it's calling for the juror to commit regarding the matter.
The trial court sustained the objection. Defense counsel stated that he was not seeking a commitment from the jurors. Instead, he was explaining how the concept of reasonable doubt would apply. The trial court responded that defense counsel could not use alleged or purported facts in his voir dire questions. Defense counsel restated the question as follows:
Suppose in a case you've heard evidence that an individual was at a location other than where the offense occurred, whether it's a block away, a mile away, or a state away; he was at a different location. You've heard evidence of people saying I saw him at that different location. You also heard evidence that his fingerprints were found at the location where the incident occurs, can you conceive of any situation where that would create a reasonable doubt in your mind?
The State again objected. Defense counsel again stated that he was not asking for a commitment; instead, he was explaining the concept of reasonable doubt. The trial court again sustained the objection and allowed defense counsel to rephrase the question. Defense counsel then asked the following question:
I'll back up again: Given those two sets of evidence then, can you see a situation where reasonable doubt would be created there?
Again, the State objected. In sustaining the objection, the trial court explained that it was aware defense counsel was not asking for a commitment. The trial court realized that defense counsel was questioning the prospective jurors about reasonable doubt, but it would not allow him to use the alleged facts of the case. The trial court concluded that defense counsel could pursue the line of questioning on reasonable doubt, provided he refrained from improper references to the purported facts of the case in his questions. Defense counsel then asked the prospective jurors a general question on reasonable doubt (i.e., whether or not they believed it a fair practice to require the State to prove its case beyond a reasonable doubt).
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. Art. 1, § 17. La.C.Cr.P. art. 786 provides that the trial court, the State, and the defendant shall have the right to examine prospective jurors. State v. Bell, 477 So.2d 759, 765 (La.App. 1st Cir.1985), writ denied, 481 So.2d 629 (La.1986).
Voir dire examination is designed to discover grounds for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial court; its rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. State v. Williams, 560 So.2d 519, 523 (La.App. 1st Cir.1990). A review of its rulings should be undertaken only on the record of the voir dire examination as a whole to determine whether or not a sufficiently wide latitude was afforded the defendant in examining prospective jurors. State v. Burton, 464 So.2d 421, 425 (La. App. 1st Cir.), writ denied, 468 So.2d 570 (La.1985).
The defendant should be allowed to make such inquiries of prospective jurors as will enable him to secure his constitutional rights by eliciting facts which show grounds for challenges. His right to intelligently exercise cause and peremptory challenges may not be curtailed by the exclusion of non-repetitious voir dire questions which reasonably explore the prospective jurors' potential prejudices, predispositions, or misunderstandings relevant to the central issues of the particular case. However, voir dire examination may not encompass unlimited inquiry into all possible prejudices of prospective jurors, nor their opinions on the evidence (or its weight) to be offered at trial, nor hypothetical questions and questions of law which call for any prejudgment of supposed facts. State v. Bell, 477 So.2d at 766.
After considering defense counsel's questions in light of the above jurisprudence, *566 we find no abuse of discretion by the trial court. The trial court's rulings clearly indicated that defense counsel was free to test the prospective jurors' attitudes toward reasonable doubt, provided he did not attempt to inject purported facts of the case. In his brief to this Court, the defendant contends that defense counsel was attempting to establish whether or not the jurors had "preconceptions and biases" about alibi evidence and/or were "predisposed" in favor of fingerprint evidence. While the questions quoted above contained references to fingerprint and alibi evidence, the questions, when viewed as a whole, primarily related to the jurors' views on reasonable doubt. The trial court's rulings did not unduly restrict defense counsel's voir dire examination on this subject. In fact, in accord with the trial court's rulings, defense counsel finally asked a question on reasonable doubt (one which did not contain any reference to purported facts of the case) before turning to a new line of questioning.
For the above reasons, these assignments of error are meritless.

ASSIGNMENT OF ERROR NO. FIVE:
In this assignment of error, the defendant contends that the trial court erred in granting the State's challenge for cause of a prospective juror, Leroy Wilkerson.
During the voir dire examination of Mr. Wilkerson, he expressed some extremely strong feelings about law enforcement officers due to some of his personal experiences. Mr. Wilkerson related one incident in which he claimed to have been arrested because of an expired inspection sticker. Mr. Wilkerson referred to police officers in general as "Wyatt Earp" and stated that he could not be a fair juror because police officers had never been fair to him. However, after an attempt at rehabilitation by defense counsel, Mr. Wilkerson concluded that he could set aside his feelings and do his duty as a juror. Thereafter, the State suggested that Mr. Wilkerson was biased and moved to challenge him for cause. Over defense objections, the trial court granted the challenge for cause and excused Mr. Wilkerson.
The trial court is vested with broad discretion in ruling on a challenge for cause; its ruling will not be disturbed on appeal absent a showing of an abuse of that discretion. State v. Dufrene, 461 So.2d 1263, 1266 (La.App. 1st Cir.1984). Considering Mr. Wilkerson's answers on voir dire, we are not convinced that the trial court abused its discretion in granting the State's challenge for cause. A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the prospective juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to the law may be reasonably inferred. State v. Thompson, 489 So.2d 1364, 1370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986). Mr. Wilkerson's prior experiences with law enforcement officers certainly revealed a deep-seated bias against them.
In any event, even if the trial court's ruling on this challenge for cause was erroneous, any such error was not reversible. The erroneous allowance to the State of a challenge for cause does not afford the defendant a ground for complaint unless the effect of such ruling is the exercise by the State of more peremptory challenges than the number to which it is entitled by law. La.C.Cr.P. art. 800 B; State v. Thompson, 489 So.2d at 1369. In the instant trial, each defendant had twelve peremptory challenges; and the State had twenty-four peremptory challenges. See La.C.Cr.P. art. 799. However, the record indicates that the State exercised only eleven peremptory challenges. (See Court Exhibit 1).
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NO. TEN:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for a mistrial.
During the cross-examination of defense witness Gary Shoals, the prosecutor asked if he had any criminal charges currently *567 pending against him. Defense counsel immediately objected, and the trial court sustained the objection. The prosecutor then asked if the East Baton Rouge Parish District Attorney was prosecuting him for any crime. Again, defense counsel objected; and the trial court sustained the objection. Thereafter, when the prosecutor indicated that he had finished questioning this witness, defense counsel requested that the jury be removed. Out of the jury's presence, defense counsel requested a mistrial on the basis that the prosecutor's questions improperly prejudiced the jury against this defense witness. The prosecutor responded that he believed the jurisprudence allowed such questioning. The trial court replied that it had already ruled and would not change its ruling. It also denied the defendant's motion for a mistrial.
In his brief to this Court, the defendant contends that the prosecution improperly attempted to impeach the credibility of a defense witness with evidence of a pending prosecution. The defense cites Louisiana Code of Evidence Articles 608 B and 609.1 B for the proposition that only a conviction of a crime can be used to attack character for truthfulness or to impeach credibility and that evidence of arrest, indictment, or prosecution is inadmissible for such purposes. However, the State correctly replies in its brief to this Court that it was not attempting to impeach Mr. Shoals' credibility with evidence of a pending prosecution. Instead, the prosecution was attempting to explore possible bias against the State as a result of the pending prosecution. The State contends that this method of establishing possible bias is authorized by Louisiana Code of Evidence Article 607 D(1).
There is no doubt that, if Mr. Shoals had been arrested in connection with the instant offense, evidence of this arrest and/or prosecution would be relevant to show bias. See former LSA-R.S. 15:492; State v. Robinson, 337 So.2d 1168, 1169-1171 (La.1976). See also State v. Haslom, 468 So.2d 1354, 1355-1356 (La. App. 1st Cir.1985). Additionally, if Mr. Shoals had been arrested for an unrelated offense, but the arrest was made by a police officer who was also involved in the offense on trial, he could have been questioned about his arrest in order to explore possible bias toward the arresting officer. See State v. Sweeney, 443 So.2d 522, 529-530 (La.1983). While arguably permitted by the new Louisiana Code of Evidence under Article 607 D(1), we believe the issue of whether or not a defense witness can be cross-examined about an arrest or prosecution which is unrelated to the offense on trial, for the purpose of exploring bias against the State, is res nova. However, for the reasons which follow, we are not called upon to decide this issue herein.
Although Mr. Shoals never responded to the prosecutor's questions about his pending prosecution because defense counsel's timely objections were sustained by the trial court, the defense requested a mistrial. However, mistrial is a drastic remedy; and, except in instances in which a mistrial is mandatory, it is warranted only when a trial error results in substantial prejudice to the defendant depriving him of a reasonable expectation of a fair trial. State v. Young, 576 So.2d 1048, 1058 (La.App. 1st Cir.), writ denied, 584 So.2d 679 (La.1991). Furthermore, in ruling on a motion for mistrial, the trial court has the sound discretion to determine whether or not the activity or comment is so prejudicial to the defendant that he could not receive a fair trial. State v. Spooner, 550 So.2d 1289, 1296-1297 (La. App. 1st Cir.1989), writ denied, 566 So.2d 394 (La.1990).
The improper impeachment and/or questioning of a witness will not require the reversal of a conviction absent a clear showing that the matters complained of are of such an extremely prejudicial nature that the defendant was deprived of a fair and impartial trial. See La.C.Cr.P. art. 921; State v. Burge, 486 So.2d 855, 865 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La.1986); State v. Price, 476 So.2d 989, 993 (La.App. 1st Cir. 1985). In our view, the trial court did not abuse its discretion in denying the defendant's motion for a mistrial. The trial *568 court's rulings prevented an answer by the witness. While the defendant argues that the prosecutor's questions alone conveyed the suggestion to the jury that Mr. Shoals had been arrested and was being prosecuted for some unknown offense, after reviewing Mr. Shoals' testimony and considering its relationship to the defendant's case as a whole, we do not believe a suggestion that he was being prosecuted for some undisclosed offense was so extremely prejudicial that it deprived the defendant of a fair and impartial trial. Moreover, in light of the substantial (if not overwhelming) evidence against the defendant, we conclude that any error resulting from this aborted line of questioning was harmless beyond a reasonable doubt. La.C.Cr.P. art. 921.
For the above reasons, this assignment of error is meritless.

ASSIGNMENTS OF ERROR NOS. TWELVE, THIRTEEN, AND FOURTEEN:
In assignment of error number twelve, the defendant contends that the trial court erred in allowing hearsay testimony to be admitted into evidence over defendant's objection. In assignments of error numbers thirteen and fourteen, the defendant contends that the trial court erred in allowing the prosecutor to ask questions which were beyond the scope of proper rebuttal. All three of these assignments of error are related to the issue of whether or not Ms. Augustus informed the police that she observed the defendant with a gun.
On direct examination, Ms. Augustus testified that the assailant who approached her side of the vehicle (the defendant) had a pistol. Mr. Williams also testified that both the defendant and the other assailant were armed with pistols. However, a defense witness, Baton Rouge Police Officer John Colter, testified that Ms. Augustus was hysterical and could not give him a description of the assailants, nor did she inform him whether or not either man was armed. On rebuttal, Baton Rouge Police Detective Michael Verret was recalled to the stand. When asked by the prosecutor if Ms. Augustus stated that she observed any weapons, the defendant objected that Det. Verret's answer would be hearsay. The trial court overruled the objection. Det. Verret then testified that Ms. Augustus informed him that she had seen a small pistol. This answer forms the basis of assignment of error number twelve.
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.C.E. Art. 801 C. However, if such a statement is offered for any other purpose, such as proof only that the statement was made, then the statement is not hearsay. State v. Byrd, 540 So.2d 1110, 1113 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989); State v. Valentine, 464 So.2d 1091, 1093 (La.App. 1st Cir.), writ denied, 468 So.2d 572 (La. 1985). In the instant case, Det. Verret's answer did not constitute hearsay because it was not offered to prove the truth of Ms. Augustus' statement, i.e., that one assailant was armed with a gun. Instead, it was offered to show only that she had made such a statement to Det. Verret, the purpose being to rebut the assertion by the defense that Ms. Augustus never informed the police that she had seen a weapon. Since the statement was not offered for its truth, it was not hearsay; and the trial court's ruling was correct.
Even assuming, arguendo, that the statement constituted improperly admitted hearsay, its introduction into evidence over the defendant's objection was harmless error. As noted above, Ms. Augustus testified on direct examination that she observed a pistol. Mr. Williams testified that both assailants had a pistol. Furthermore, after Det. Verret's rebuttal testimony, Ms. Augustus was recalled to the stand and she again testified that she had seen the defendant with a pistol. Mr. Williams was also recalled to the stand on rebuttal, and he again testified that both perpetrators were armed with pistols. Accordingly, Det. Verret's rebuttal testimony that Ms. Augustus told him she had observed a weapon was merely cumulative and corroborative of *569 other properly admitted evidence; therefore, any error in the introduction of this statement was harmless beyond a reasonable doubt. State v. Martin, 558 So.2d 654, 659 (La.App. 1st Cir.), writ denied, 564 So.2d 318 (La.1990); State v. Byrd, 540 So.2d at 1114. Accordingly, assignment of error number twelve is meritless.
Assignments of error numbers thirteen and fourteen both relate to Ms. Augustus' rebuttal testimony. After Det. Verret testified on rebuttal, Ms. Augustus was recalled to the stand. When the prosecutor asked her if she had observed the defendant with a weapon, she replied in the affirmative. He then asked her to describe it, and she replied that it was "a dark handgun." Defense counsel objected that this line of questioning constituted improper rebuttal, but the trial court overruled the objection. The prosecutor then initiated a line of questioning about whether or not Ms. Augustus remembered speaking with Officer Colter and whether or not she described the assailant's gun to him. During this series of questions, the prosecutor asked: "What did he [Officer Colter] do with you that night?" Again, defense counsel objected that this question exceeded the scope of proper rebuttal; but the trial court overruled the objection and permitted the questioning to continue.
In his brief to this Court, the defendant contends that these questions exceeded the scope of proper rebuttal. Addressing assignment of error number thirteen, he explains that the issue was not whether Ms. Augustus saw a weapon or could describe it, but whether or not she informed Officer Colter that she had seen a weapon. Addressing assignment of error number fourteen, the defendant also contends that the question: "What did he do with you that night?" did not rebut whether or not Ms. Augustus informed Officer Colter that she had seen a gun.
The State has the right to rebut evidence adduced by the defense. La.C.E. Art. 611 E. See also former LSA-R.S. 15:282. Generally, rebuttal evidence is that which is offered to explain, repel, counteract, or disprove facts given in evidence by the adverse party. The determination of whether or not the evidence is rebuttal evidence, and therefore admissible, is an issue which is addressed to the sound discretion of the trial court. State v. Kimble, 546 So.2d 834, 841 (La.App. 1st Cir.1989).
In our view, the trial court properly overruled these defense objections to the prosecutor's rebuttal questioning of Ms. Augustus. Through the testimony of Officer Colter, the defense suggested that Ms. Augustus never informed Officer Colter that she had seen a weapon. The State was entitled to rebut this evidence. In order to lay a proper foundation for this rebuttal testimony, it was proper to ask Ms. Augustus if she had seen the defendant with a weapon and if she could describe it. Likewise, before establishing whether or not Ms. Augustus had informed Officer Colter that she had seen a weapon, it was proper to lay a foundation that Ms. Augustus remembered Officer Colter, remembered speaking with him, and remembered what she had done with Officer Colter that night (i.e., returning to the scene of the crime with him). In overruling the defendant's objections, the trial court obviously found these questions to be within the scope of proper rebuttal testimony. We agree. Accordingly, assignments of error numbers thirteen and fourteen are meritless.

ASSIGNMENT OF ERROR NO. FIFTEEN:
In this assignment of error, defendant contends that the trial court erred in denying his motion for post-verdict judgment of acquittal. Specifically, he argues that the evidence was insufficient to support the instant convictions.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La. App. 1st Cir.1984).
*570 LSA-R.S. 14:44.1 provides, in pertinent part:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
* * * * * *
(3) Physically injured or sexually abused;
* * * * * *
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another;....
LSA-R.S. 14:64 A provides:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
In the instant case, there is no doubt that two young, black males committed second degree kidnapping and armed robbery of Clyde Williams. Mr. Williams was ordered from Ms. Augustus' car at gunpoint. The assailants forced him to walk a short distance to a nearby tree where they searched his pockets and took some change and some articles of clothing, including his sandals and a belt. Before Mr. Williams could escape, one perpetrator struck him on the head with a gun and the other kicked him.
In his brief to this Court, the defendant does not contest that these offenses were committed. Instead, he raises the issue of mistaken identity. Where the key issue is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the State is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). Positive identification by only one witness may be sufficient to support the defendant's conviction. State v. Royal, 527 So.2d 1083, 1086 (La.App. 1st Cir.), writ denied, 533 So.2d 15 (La.1988).
In the instant case, both Ms. Augustus and Mr. Williams identified the defendant as one of the two perpetrators. When the police first observed the defendant, he was standing only a few feet from the area where Mr. Williams' sandals were recovered. Both State fingerprint experts testified that two of the fingerprints recovered from Ms. Augustus' car belonged to the defendant. While the defendant took the stand and denied any involvement in these offenses, the guilty verdicts in this case indicate that the jury accepted the testimony of the State's witnesses and rejected the testimony of the defense witnesses. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d at 38. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38.
After a careful review of the record, we believe that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the State proved beyond a reasonable doubt that the defendant committed the instant offenses. Accordingly, the trial court correctly denied the defendant's motion for post-verdict judgment of acquittal.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER SIXTEEN:
In this assignment of error, the defendant contends that the trial court erred in imposing excessive sentences and in failing to comply with the sentencing guidelines of La.C.Cr.P. art. 894.1.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La.C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect *571 that it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
Before imposing sentence, the trial court reviewed the presentencing investigation report and considered the defendant's criminal record. The trial court noted that, as a juvenile, the defendant had been arrested for simple battery of a police officer, public drunkenness, criminal mischief, attempted second degree murder, and two counts of aggravated battery. As an adult, in connection with the instant offenses, the defendant was also charged with sexual battery of Ms. Augustus; however, this charge was nol prossed after the defendant was convicted of the instant offenses. The trial court considered the defendant's background, including his social history, education, employment record, health, and alcohol and drug usage. The trial court also noted that the defendant was single and had no dependents. The trial court found that the defendant had not been provoked and that there was no excuse or justification for these offenses. The trial court noted that the defendant's conduct threatened serious harm to the victims. Finally, the trial court concluded that the defendant was in need of correctional treatment and stated that any lesser sentences would deprecate the seriousness of these offenses. Considering the above, we find that the trial court adequately complied with the Article 894.1 guidelines.
For his conviction of second degree kidnapping, the defendant was exposed to a minimum sentence of five years at hard labor, including two years without benefit of parole, probation, or suspension of sentence, and a maximum sentence of forty years at hard labor, all without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:44.1 C. The defendant received a sentence of thirty years at hard labor, without benefit of parole, probation, or suspension of sentence. For his conviction of armed robbery, the defendant was exposed to a minimum sentence of five years at hard labor, without benefit of parole, probation, or suspension of sentence, and a maximum sentence of ninety-nine years at hard labor, without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:64 B. The defendant received a concurrent sentence of thirty years at hard labor, without benefit of parole, probation, or suspension of sentence, for this conviction. Considering the circumstances of these offenses and the reasons for sentencing given by the trial court, we find no abuse of discretion in the sentences imposed.
This assignment of error is meritless.
For the foregoing reasons, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] In determining whether a ruling on a motion to suppress was correct, we are not limited to the evidence adduced at the hearing on that motion. We may consider all pertinent evidence given at the trial of the case. State v. Fleming, writ denied, 462 So.2d 191 (La.1984.) 457 So.2d 1232, 1235 n. 3 (La.App. 1st Cir.1984).