655 So.2d 448 (1995)
STATE of Louisiana
v.
Craig Stanley ANDREWS.
No. 94 KA 0842.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
*450 Donald D. Candell, Asst. Dist. Atty., Gonzales, for plaintiff-appellee.
Thomas D. Daigle, Paincourtville, for defendant-appellant.
Before WATKINS and FOGG, JJ., and TANNER[1], J. Pro Tem.
FOGG, Judge.
The defendant, Craig Stanley Andrews, was charged by bill of information[2] with *451 purse snatching, a violation of LSA-R.S. 14:65.1. He pled not guilty and, after trial by jury, was found guilty as charged. The defendant subsequently was sentenced to eighty-four months at hard labor with credit for time served. He has appealed, urging the following assignments of error:
1. There was insufficient evidence presented to convict the defendant.
2. The sentence was excessive.
3. The photographic lineup presented at trial was unduly suggestive.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant contends in his first assignment of error that there was insufficient evidence presented at trial to convict him of this crime. In particular, the defendant argues that the state failed to prove that the defendant was the person who took the victim's purse. He claims that the victim's opportunity to view the assailant was limited and she was the only eyewitness to the crime whom the state presented to identify the defendant.
The standard of review for the sufficiency of evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La. C.Cr.P. art. 821; State v. King, 563 So.2d 449 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). This court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. State v. Polkey, 529 So.2d 474 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
The testimony of the victim is sufficient to establish the elements of the offense. State v. Creel, 540 So.2d 511 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
LSA-R.S. 14:65.1(A) defines purse snatching as:
the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.
The victim, Beverly Lessard, testified that on June 7, 1992, at approximately 10:00 a.m., she stopped by Frank Jones' house to invite him to a card game for her husband. Lessard pulled into the driveway of Jones' house and saw a man and two women standing on his porch. After she rolled down her car window to ask if Jones was home, the individuals on the porch told her that he was not at home. Lessard began to back out of the driveway when a man, later identified as the defendant, opened her car door and got into the passenger seat of her car. Lessard asked the defendant to get out of her car. She kept the car's engine running and continued to gradually back out of the driveway. The defendant asked Lessard what she wanted with Jones. Lessard told him that it was none of his business and again asked him to get out the car. The defendant then tried to "sell [her] something." She again asked the defendant to get out of the car, but the defendant did not leave.
Lessard stopped the car because she did not want to leave the view of the people on Jones' front porch and she did not want to leave Jones' residence with the defendant in her car. The defendant again asked her what she wanted with Jones, and Lessard responded that it was not any of his business. He tried to "sell [her] something again." Lessard stated that she was "very, very scared." The defendant then opened the car door, yelled something to the people on the porch, told her he would "tell Frankie that [she] came by," grabbed her purse, and ran behind the house. Lessard yelled at the *452 people on the porch to help her, but they told her that they did not see anything. Lessard stated that she could not chase the defendant because she was handicapped and could not run. Lessard drove to the police station, where she was directed to the Ascension Parish Sheriff's Office. She gave a statement to the sheriff's officers regarding the incident.
Later that same evening, Lessard and her husband went to Jones' house. She stated that Jones was upset about what had happened to Lessard. Lessard gave Jones a description of the assailant which included the fact that he was skinny and about 5'7". She stated that the defendant was dressed "as if he had been at work." Jones then gave her a name of the person who he thought committed the instant crime. Lessard subsequently gave the name given to her by Jones to Officer Mike Toney. Lessard later was asked to look at a photographic lineup that consisted of six photographs. She immediately picked the defendant out of the lineup as the man who took her purse. Lessard stated that she did not give the defendant permission to take her purse or lead him to believe that he had the authority to take her purse. Lessard further testified that there was $100.00 in the purse that the defendant took from her. Lessard stated that she had not seen the man prior to the instant incident. She then identified the defendant in court as being the man who jumped into her car. Lessard stated that there was no doubt in her mind that the defendant was the person who entered her car and took her purse.
On cross-examination, Lessard stated that she was backing her car out of the driveway very slowly and the defendant jumped into her vehicle. She estimated that the defendant was in her vehicle three to four minutes and stated that she got a good look at the defendant because he was "in [her] face the whole time." She testified that in the statement she gave to the police she described the assailant as a skinny black male and gave an estimate of the assailant's height. She did not think that she told the officers how the assailant was dressed. Lessard was home alone when Toney showed her the photographic lineup at her house. She again stated that she was able immediately to identify the assailant from the photographic lineup. She further stated that Toney did not make any suggestions to her about the photographs.
On redirect examination, Lessard stated that she did not feel any pressure by Toney to identify someone from the photographic lineup. She was positive that the defendant was the person who snatched her purse.
Officer Mike Toney of the Ascension Parish Sheriff's Office testified that he investigated the offense. Lessard told him that she had gone to Jones' house and had spoken with someone on the front porch as she did not get out of the car. As she was leaving the house, a black male got into her vehicle on the passenger side and asked her to "buy something." Lessard told him that she did not want to buy anything and asked him a few times to get out of her car. The assailant subsequently exited Lessard's vehicle, stole her purse, and ran behind Jones' house. Toney testified that he went to Jones' house to speak to Jones. Jones was not there, but an unidentified female gave him the name "Stanley" as a possible assailant and told him that Jones knew who the assailant was. Subsequently, Toney was able also to obtain the name "Andrews" from Jones. During his investigation, Toney determined that a man named Craig Stanley Andrews, the defendant, lived in the area. He put a photographic lineup together and put the defendant's photograph in the lineup. Lessard picked the defendant out of the lineup as the assailant without any hesitation and within a minute of his showing her the lineup.
On cross-examination, Toney stated that he spoke to some of the females that live at Jones' home. However, he obtained only the name "Stanley" from them and did not acquire any other information because they told him that they did not want to get involved. Toney admitted that he did not know if these women were witnesses to the crime. Toney testified that Lessard described the assailant only as a black male and stated that she could pick him out of photographs.
*453 On redirect examination, Toney stated that, although Lessard did not describe the assailant to him, she did tell him that if she saw a picture of the assailant she would remember him. He stated that he got the defendant's name from Jones.
Frank Jones testified that he later heard about the incident which involved the taking of Lessard's purse. He found the purse behind a shed behind his house. He stated that he did not give Lessard a name of the person who might have taken her purse. When asked by Toney if he knew the person he showed him in a photograph, he told Toney that he did know who the person was in the photograph. Jones did tell Lessard that he would help her find who took her purse. Lessard told Jones that the man who stole her purse was slim and approximately 5'7".
On cross-examination, Jones stated that he knows a few men by the name of Stanley but the defendant was the only man named Stanley that came around his house. On redirect examination, Jones stated that he did not immediately know who the assailant was, but other people informed him who had taken the purse.
Deputy Henry Coleman testified as a witness for the defense. He took a statement from Lessard, who told him that a black male snatched her purse; but she did not give him any further description of the assailant. On cross-examination, he noted that Lessard was very upset at the time she gave him the statement. He denied that Lessard told him that she would have been able to identify the assailant if shown photographs. However, after refreshing his memory by reading Lessard's statement, he admitted that she did state that she could identify the assailant in a line-up. On redirect examination, Coleman stated that Lessard told him that she did not recognize the assailant but she later told him she could identify the assailant from a photograph.
The state called Lessard to testify on rebuttal. She testified that she told Coleman that she could not remember details about the assailant's facial features but did tell him that she could identify the assailant in a photographic lineup.
Where the key issue is a defendant's identity as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Holts, 525 So.2d 1241 (La.App. 1st Cir.1988). Positive identification by only one witness may be sufficient to support the defendant's conviction. State v. Royal, 527 So.2d 1083 (La.App. 1st Cir.), writ denied, 533 So.2d 15 (La.1988).
We find that the state's evidence negated any reasonable probability that the defendant was not properly identified as the assailant. Lessard identified the defendant in court as her assailant and picked him from a photographic lineup. Furthermore, the guilty verdict returned in this case indicates that the jury believed the testimony of the state's witnesses.
After a careful review of the record, we believe that a rational trier of fact, viewing all of the evidence in the light most favorable for the prosecution could have concluded that the state proved beyond a reasonable doubt that the defendant was guilty of purse snatching and that the state negated every reasonable probability of misidentification. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO (ASSIGNMENT OF ERROR NUMBER THREE IN THE DEFENDANT'S BRIEF)
The defendant contends in this assignment of error that the sentence was excessive. He argues that, although he was sentenced in accordance with the sentencing guidelines, the trial court should have departed downwards from the sentencing range suggested in the guidelines because the defendant did not use force, threats, or intimidation in snatching the victim's purse.
The statutory penalty for purse snatching is imprisonment, with or without hard labor, for not less than two years and for not more than twenty years. LSA-R.S. 14:65.1(B). Thus, the defendant's sentence of eighty-four months at hard labor does comply with the statutory requirements.
*454 The defendant was sentenced on April 21, 1993; therefore, the new sentencing guidelines applied. Defense counsel filed a motion to reconsider sentence in which he claimed that the defendant's sentence was excessive. The trial court subsequently denied the defendant's motion to reconsider sentence.
Although the defendant argues in his brief to this Court that the trial court should have made a downward departure from the sentencing guidelines, the defendant did not give any specific grounds for excessiveness in his motion to reconsider sentence. The failure to include a specific ground upon which a motion to reconsider sentence is based precludes the defendant from urging that ground on appeal. See La.C.Cr.P. art. 881.1(D). In State v. Mims, 619 So.2d 1059, 1059-1060 (La.1993), the Supreme Court indicated that "[i]f the defendant does not allege any specific ground for excessiveness [in his motion to reconsider sentence] or present any argument or evidence not previously considered by the court at original sentencing, then the defendant does not lose the right to appeal the sentence; the defendant is simply relegated to having the appellate court consider the bare claim of excessiveness."
This court will not set aside a sentence on the ground of excessiveness if the record supports the sentence imposed. See La.C.Cr.P. art. 881.4(D). A sentence imposed in compliance with the guidelines still might be deemed excessive under the Louisiana Constitution. State v. Trahan, 93-1116, p. 24 (La.App. 1st Cir. 5/20/94); 637 So.2d 694. Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within the statutory limits. State v. Lobato, 603 So.2d 739 (La.1992).
The defendant was a third felony offender and had a number of arrests for different crimes. Considering the above, we are unable to find that the trial court abused its discretion in sentencing the defendant. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE (ASSIGNMENT OF ERROR NUMBER TWO IN THE DEFENDANT'S BRIEF)
The defendant contends in this assignment of error that the photographic lineup presented at trial was unduly suggestive. He argues that, because only two of the photographs had similar characteristics, the photographic lineup does not contain photos of people bearing sufficient resemblance to reasonably test an identification. He further contends that there was a likelihood of misidentification as Lessard was not able to describe the defendant in her written statement, and her opportunity to view the defendant and the amount of attention she gave the defendant was minimal as she was continuously backing out of the driveway.
A defendant attempting to suppress an identification must prove that the identification was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. Even should the identification procedure be considered suggestive, that factor alone does not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Thomas, 589 So.2d 555 (La.App. 1st Cir.1991). In reviewing an identification procedure, the trial court must look at the totality of the circumstances surrounding the identification procedure in order to determine whether or not the procedure was so unnecessarily suggestive and so conducive to irreparable mistaken identification that the defendant was denied due process of law. The trial court's determination on the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Thomas, 589 So.2d at 563.
*455 After reviewing the photographic lineup, we find no undue suggestion as to the identification procedure. Lessard was shown a photographic lineup of six photocopies of photographs. The photos were all of black males that appeared to be within the same range in age, and all appeared to have facial hair. There was no indication given as to their weight or height. The photos show the subjects only from the shoulders to the top of the head. There were no markings on the photographs, and no information concerning the subjects was listed on the lineup. Lessard testified that when Toney showed her the photographic lineup he did not make any suggestions to her about the photographs, nor did he pressure her to pick someone out of the lineup.
Furthermore, we find the identification to be reliable under the circumstances present herein. In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the U.S. Supreme Court considered these five factors in determining whether or not a photographic identification was reliable: (1) the witness' opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness' certainty displayed at the time of the identification; and (5) the length of time elapsed between the crime and the identification.
Applying the Manson analysis to the facts of the instant case, we find the identification of the defendant by Lessard to be reliable. Lessard testified that the defendant was in her car three to four minutes. She stated that she got a good look at the defendant because he was "in [her] face the whole time." Although Lessard did not give a detailed description of the assailant, she did give a general description and she stated that she would be able to pick the assailant out of a photographic lineup. Lessard immediately identified the defendant as the assailant when shown the photographic lineup. She stated that she was positive that the defendant was the assailant. According to Toney and the date written on the photographic lineup, Lessard identified the defendant in the photographic lineup on June 23, 1992. Lessard also positively identified the defendant at trial as the assailant. The in-court and out-of-court identifications were positive and unequivocal. Accordingly, we find that the trial court correctly denied the defendant's motion to suppress the photographic lineup. This assignment of error is without merit.
Therefore, for the reasons assigned above, the conviction and sentence of the defendant are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The bill of information listed only the charged offense and its statutory citation and omitted listing the essential facts of the offense charged as required by La.C.Cr.P.art. 464. Additionally, the bill of information states that the offense occurred on June 8, 1992, while the testimony at trial indicates that it occurred on June 7, 1992. However, at no time did the defendant express doubt as to the nature of the charge or the time of the offense, nor did he object to the errors. The defendant was fully informed of the nature of the charge. The defendant does not allege, nor do we find, that he was misled or in any way prejudiced by these errors.