727 So.2d 605 (1998)
STATE of Louisiana
v.
Jarrell JARVIS.[1]
No. 98 KA 0522.
Court of Appeal of Louisiana, First Circuit.
December 28, 1998.
*606 Doug Moreau, District Attorney by Aaron Brooks, Assistant District Attorney, Baton Rouge, LA, for appellee, State of Louisiana.
Gwendolyn K. Brown, Baton Rouge, LA, for defendant/appellant, Jerrall Jarvis.
BEFORE: SHORTESS, C.J., CARTER, and WHIPPLE, JJ.
CARTER, J.
The defendant, Jerrell Jarvis, and two co-defendants, Laron Cannon and Narquette Andrew Scott, were charged by bill of information with conspiracy to commit armed robbery (Count 1), in violation of LSA-R.S. 14:26 and 64; and armed robbery (Count 2), in violation of LSA-R.S. 14:64. Initially, the defendant pled not guilty and filed motions to suppress. However, upon the denial of the motions to suppress, the defendant withdrew his not guilty plea and pled guilty as charged to Count 2, reserving his right to appeal the trial court's denial of the motions to suppress. See State v. Crosby, 338 So.2d 584, 588 (La.1976).
Pursuant to a plea bargain agreement, the conspiracy to commit armed robbery charge was dropped, and the defendant received an agreed upon sentence of twenty years at hard labor without benefit of parole, probation, or suspension of sentence. The trial court also agreed that this sentence would run concurrent with any other sentence(s) the defendant might receive as a result of pending burglary charges.
The defendant has appealed,[2] alleging two assignments of error, as follows:

*607 1. The trial court erred in denying the defendant's motions to suppress.
2. The trial court erred in failing to give the defendant credit for time served.
Because there was no trial, the following facts are derived from the testimony and evidence introduced at the motion to suppress hearing. On the morning of January 27, 1997, three black males robbed the Hancock Bank at 11659 Plank Road in Baton Rouge, Louisiana. They fled the bank in a stolen, white Cadillac. As they drove away from the bank, one or more witnesses observed that a dye-pack exploded, releasing red smoke. The perpetrators abandoned the Cadillac near a community center and fled on foot. The police soon discovered the Cadillac and were searching the area for the perpetrators or witnesses. One witness, Donald Bell, had observed three black males running across a field near the community center. Bell recognized them from the neighborhood, although he did not know their names. The three men approached Bell and asked him for a cigarette as they ran past him on Helene Street headed towards Fraternity Street. One of the men had a jacket draped across a bag of some type.
Bell was brought to the Scotlandville Substation on Rosenwald Street for questioning by the police. At the substation, East Baton Rouge Parish Sheriff's Deputy J.D. Hall began interviewing Bell, who requested to smoke a cigarette. Because smoking was not allowed inside, they went outside. As the two men were standing outside talking, a red Toyota Four Runner drove past. Bell stated: "There those guys go." Deputy Hall specifically asked Bell who he meant, and Bell indicated that he was talking about the three men who ran past him earlier. Deputy Hall got into his unit, began following the Four Runner, and called for assistance. A few minutes later, several police cars surrounded the Four Runner at a Chevron Station at 78th Street and Scenic Highway. The defendant, who was driving, and the passengers, Laron Cannon and Narquette Scott, were ordered out of the vehicle. A subsequent frisk for weapons revealed a plastic bag of marijuana rolled up in the defendant's pants leg, and he was placed under arrest.
When it was discovered that Scott lived on Fraternity Street, Deputy Kirk Evans was ordered to go and observe Scott's residence until a search warrant could be obtained. When Deputy Evans arrived, he approached the house and knocked on the door, but no one answered. As he walked back to his unit, he observed "smoke billowing from the backyard." He walked on a "dirt path" between Scott's house and the house next door and, from the side of the house, he observed items of evidence on fire, with flames two to three feet high. Deputy Evans testified that he saw a light colored canvas type bag with handles which was "smoldering." He ran to the bag and observed red dyed currency, a Hancock Bank wrapper, ski masks, gloves, and a plaid jacket. Deputy Evans got a hose, extinguished the fire, and reported the situation to Deputy Roger Corcoran. Shortly thereafter, several officers arrived with a search warrant for Scott's house.
Meanwhile, back at the substation, the defendant was given his Miranda rights and questioned by Deputy Robert Caillouet. Although the defendant denied involvement in the armed robbery, he explained that he and Scott saw a white Cadillac parked near the Central Road Community Center. Red smoke was coming from the passenger area. They discovered bags of money and clothes which they removed and brought to Scott's residence on Fraternity Street. When they discovered the red dye, they decided to burn everything. However, when the defendant subsequently was questioned by Deputy Corcoran, he gave a full confession detailing the respective roles of himself and his two cohorts and recounting their steps from before the robbery until their arrest at the Chevron Station.

ASSIGNMENT OF ERROR NO. ONE
In the first assignment of error, the defendant contends that the trial court erred in denying his motions to suppress the confessions and the physical evidence. Specifically, the defendant contends that there was no probable cause or reasonable suspicion for his stop and arrest at the Chevron Station. Based upon this premise, he further argues that the seizure of the physical evidence and the confessions should have been suppressed *608 as fruit of the poisonous tree. He also asserts that Deputy Evans illegally entered Scott's backyard on Fraternity Street to extinguish the fire. For the reasons expressed herein, we find no error in the trial court's denial of the motions to suppress.
Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Hubbard, 506 So.2d 839, 841 (La.App. 1st Cir.1987). Although mere suspicion cannot justify an arrest, the officer does not need proof sufficient to convict. State v. Thomas, 589 So.2d 555, 562 (La.App. 1st Cir.1991). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Hubbard, 506 So.2d at 842. One of the most important elements in determining whether or not probable cause exists is satisfied when the police know that a crime actually has been committed. When a crime has been committed and the police know it, they have only to determine whether or not there is reasonably trustworthy information to justify a man of ordinary caution in believing the person to be arrested has committed the crime. State v. Thomas, 589 So.2d at 562.
In the instant case, a small map (S-1) introduced at the suppression hearing is somewhat helpful. Central Road and Rosenwald Road apparently run east and west and parallel each other, separated by only a few blocks, although the substation and community center locations on these streets are unmarked. Fraternity Street also runs east and west and is about three blocks south of Rosenwald Road. Helene Street runs north and south, and connects Fraternity and Rosenwald. The bank robbery apparently occurred around 10:40 a.m. and the stop of the defendant's vehicle apparently occurred shortly before 1:00 p.m.
The law enforcement officers knew that an armed robbery of a bank had been committed by three black males who fled in a stolen white Cadillac. One or more witnesses observed red smoke from the Cadillac as it fled, indicating that the dye pack had exploded. The stolen Cadillac was discovered abandoned near the Central Road Community Center. A witness, Mr. Bell, had observed three black males running across a field near the community center. Bell knew them from the neighborhood, although he did not know their names. The three men approached Bell and asked him for a cigarette as they ran past him on Helene Street headed towards Fraternity Street. One of the men had a jacket draped across a bag of some type. When Bell was brought in to the substation for questioning, the defendant and his cohorts happened to drive by in a red Toyota Four Runner. Bell informed Deputy Hall that the three men who ran past him earlier were in the Four Runner, which was stopped shortly thereafter. One of the passengers, Scott, lived on Fraternity Street, which was the direction in which the three men seen by Mr. Bell were headed. We conclude the officers had probable cause to stop the Four Runner and arrest the defendant and his two cohorts.[3]
While the defendant notes that Mr. Bell was not called as a witness at the hearing, and he questions how Bell could have seen inside a moving vehicle with tinted windows, it was never established what degree of tint the windows had or the speed at which the Four Runner was moving as it passed the substation. Perhaps the windows were down at this point, or Bell might have been familiar with the vehicle from the neighborhood. Deputy Hall testified that he had no reason *609 to doubt Mr. Bell's credibility. Mr. Bell was an ordinary citizen, not an informant. As the trial court correctly noted, Bell's credibility and ability to observe might have presented an opportunity for rigorous cross-examination at trial, but such jury questions were not relevant to the reasonable actions which the officers took in this case based upon the representations made to them by Mr. Bell.
Therefore, we conclude that the motions to suppress the physical evidence and the defendant's confessions were properly denied. The stop and arrest of the defendant were made with probable cause. Additionally, Deputy Evans did not violate the rights of the defendant or his cohorts by taking reasonable steps to preserve the physical evidence. A burning building creates an exigency that justifies a warrantless entry by fire officials to fight the blaze. Michigan v. Clifford, 464 U.S. 287, 293, 104 S.Ct. 641, 646, 78 L.Ed.2d 477 (1984); Michigan v. Tyler, 436 U.S. 499, 510, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486 (1978). While Deputy Evans did enter Scott's backyard without permission, there were exigent circumstances; he was a law enforcement officer investigating an obvious fire. Furthermore, Deputy Evans first viewed the smoke from the street, then actually saw the fire from a dirt path which ran between the side of the houses, a vantage point where anyone could have observed Scott's backyard.
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NO. TWO
In this assignment of error, the defendant contends that the trial court erred in failing to give him credit for time served.
The defendant was sentenced on December 1, 1997. Although the minutes show that the trial court, in imposing this sentence, gave the defendant credit for time served, the sentencing transcript reflects no such credit. Such an allowance of credit is mandatory. LSA-C.Cr.P. art. 880. See State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). However, the amendment of Article 880 by 1997 La.Acts No. 788, § 1, effective August 15, 1997, rendered the giving of credit for time served automatic, without the necessity or formality of the trial court having to so state. See State v. Hayes, 97-1526, p. 7 (La.App. 1st Cir.5/15/98); 712 So.2d 1019, 1023.
This assignment of error is meritless.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The defendant's name is also spelled Jerrell Jarvis in the record; however, we use the spelling found in the transcripts.
[2] The status of the charges against co-defendants Cannon and Scott is not revealed in the instant record and they are not parties to this appeal.
[3] In its brief to this Court, the State proposes that the officers had reasonable suspicion for a Terry stop and, when the bag of marijuana was discovered rolled up in the defendant's pants leg during a frisk for weapons, under the "plain view" exception, there was probable cause to arrest the defendant at that point. Interestingly, we note that the State's theory does not rely on the "plain feel" exception (see Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); State v. Mangrum, 95-0926, p. 5 (La.App. 1st Cir.5/10/96); 675 So.2d 1150, 1153). Nevertheless, because we find probable cause for the stop and arrest of the defendant, we pretermit consideration of this theory of the case advanced in the State's brief.